USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2-4-19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MOHAMMAD TANVEER,

                Petitioner,

-against-

UNITED STATES OF AMERICA,

                Respondent.

06-cr-1135 (JGK)

MEMORANDUM OPINION
AND ORDER

JOHN G. KOELTL, United States District Judge:

The petitioner, Mohammad Tanveer, brings this 28 U.S.C. § 2255 petition to vacate his guilty plea and conviction on grounds of alleged ineffective assistance of counsel. The petitioner offers, alternatively, to plead to a nonaggravated felony. The petitioner's § 2255 petition is **denied**.

I.

The petitioner, a noncitizen, emigrated from Pakistan to the United States in the 1990s when the political entities with which he was affiliated lost power. Pet. ¶ 20. He applied for asylum in the United States, but in March of 1998 he failed to attend a hearing in immigration court related to his asylum application. Id. ¶ 7; Govt. Ex. 13. Due to the petitioner's nonattendance, the immigration judge found that the petitioner had "abandoned any and all claim(s) for relief from deportation/exclusion," and ordered the petitioner deported from the United States to Pakistan. Govt. Ex. 13. Despite this

1

pending order for his removal from the United States, the petitioner remained in the country.

Between January 2004 and August 2006, the petitioner and two codefendants carried out a scheme whereby they paid illegal remuneration to induce people to purchase prescription drugs that were paid by Medicaid. Govt. Ex. 1 at 1-3. Following his indictment, the petitioner entered into a cooperation agreement with the Government to assist in its cases against his codefendants. See Govt. Ex. 2. On June 10, 2008, pursuant to the plea agreement, the petitioner pleaded guilty to one count of offering and paying kickbacks, bribes, and rebates to induce Medicaid recipients to order prescription drugs, in violation of 18 U.S.C. § 371 and 42 U.S.C. § 1320a-7b(b)(2)(b). Govt. Ex. 2 at 1; Govt. Ex. 3. The petitioner was represented by defense counsel throughout his criminal proceeding.[1] As a noncitizen, the petitioner's guilty plea subjects him to mandatory removal from the United States for having committed an aggravated felony. See 8 U.S.C. §§ 1101(a)(43), 1227(a)(2)(A)(iii). This is in addition to the outstanding order issued in 1998 for his removal.

At his sentencing on January 14, 2010, this Court found that the petitioner's guideline sentencing range was thirty-

---

[1] The trial counsel whose representation is the subject of the petitioner's 28 U.S.C. § 2255 petition was the petitioner's third and last attorney in his criminal proceeding.

seven to forty-six months' imprisonment. However, given the petitioner's cooperation with the Government, the Court downwardly departed and sentenced the petitioner principally to four years' probation. Govt. Ex. 8 at 18-20.

Represented by new counsel, the petitioner filed this 28 U.S.C. § 2255 petition, alleging that trial counsel's performance was deficient for two particular reasons. First, the petitioner claims that during a proffer session before his guilty plea, the prosecutor and trial counsel advised him that his criminal case was distinct from, and therefore would not affect, his outstanding immigration case. Second, the petitioner asserts that trial counsel did not explain clearly that cooperating with the Government might reduce the petitioner's chance of going to jail, but that it would not lower his chance of removal and that it might subject him to danger if he returned to Pakistan. These deficiencies, according to the petitioner, render his guilty plea invalid because it was not given knowingly and voluntarily.

This Court held two evidentiary hearings – one on September 12, 2018 (Hearing 1), and the other on October 15, 2018 (Hearing 2) – at which trial counsel, the petitioner, and the prosecutor in the petitioner's criminal case ("the prosecutor") all testified. Having reviewed the evidence and assessed the

credibility of the witnesses, the Court makes the following findings of fact and reaches the following conclusions of law.

**A.**

Concerning his first theory of ineffective assistance of counsel, the petitioner testified that during a proffer session he asked the prosecutor three times whether his criminal case would have any effect on his outstanding immigration case, and the prosecutor confirmed that it would not. Hearing 2 Tr. at 12-14. The petitioner added that trial counsel was present and did not advise otherwise after the petitioner asked trial counsel whether the prosecutor was correct. Id. This testimony was not credible.

Trial counsel testified credibly that, although he does not recall the specifics of his representation of the petitioner, he "certainly discussed immigration consequences and the risk of deportation" with the petitioner. Hearing 1 Tr. at 65. Trial counsel added that his standard practice at the time of representation was to suggest that noncitizen clients see an immigration lawyer if they had questions or concerns related to immigration consequences. Id. Trial counsel also stated that he would have been particularly careful to follow that practice in the petitioner's case for two reasons. Id. First, trial counsel recalled that the petitioner had a pending warrant for his removal. Id. Second, trial counsel stated that the petitioner

4

had received threats from people in the United States and in Pakistan about what might happen to him if he returned to Pakistan. Id. The petitioner denied that trial counsel told him to consult an immigration attorney. Hearing 2 Tr. at 16.

Trial counsel also testified that his general practice during the time he represented the petitioner was never to render substantive legal advice to his clients in front of an adversary. Hearing 1 Tr. at 78. This was his practice "for a number of reasons," most importantly to avoid waiving the attorney-client privilege. Id. at 84. Indeed, trial counsel stated that his general practice also included instructing the attorneys with whom he worked to avoid providing substantive legal advice to a client and to defer any questions to him. Id. at 85-86; see Govt. Ex. 16 (an email in which trial counsel advised an attorney in his office to review an agreement offered to the petitioner at a proffer session with the petitioner and the interpreter, but not the Government, in the room).

Trial counsel testified that he does not remember specifically the petitioner's asking him or the prosecutor during a proffer session whether the petitioner's criminal and immigration cases were distinct. Hearing 1 Tr. at 77. However, trial counsel testified credibly that he would not have advised the petitioner that the cases were distinct because "[he] doesn't] think it's a true statement, number one. And number

5

two, [he] would not have given a substantive answer to a client in front of an adversary." Id. at 78.

Moreover, the prosecutor testified credibly that there was a shared understanding among the petitioner, trial counsel, and himself that the petitioner would be removed from the United States following his guilty plea. Id. at 14, 23, 30-31. The prosecutor stated that he remembers "very specifically" that the immigration consequences facing the petitioner were unfortunate because the petitioner's codefendants - both of whom were more culpable in the criminal scheme - might not be deported, and because the petitioner faced safety concerns in Pakistan. Id. at 14, 18, 23.

The prosecutor testified that he also did not recall the petitioner asking during a proffer session whether his criminal and immigration cases were distinct. Id. at 19. The prosecutor stated that while the fact that the two proceedings were distinct did not "seem contrary to facts," it was unlikely that defense counsel said anything to the effect that the criminal case had no effect on the immigration case because "that [the petitioner] shouldn't have any concern[] [about deportation] is unlikely given what I do remember of the case." Id.

In short, there is no credible evidence that defense counsel provided any assurance to the petitioner that he would not be deported as a result of his guilty plea and conviction.

6

## B.

Concerning his second theory of ineffective assistance of counsel, the petitioner initially testified during his direct examination that it was his understanding that, if he cooperated with the Government, he "maybe . . . would get to stay in [the United States]." Hearing 2 Tr. at 11, 18. However, also during his direct examination, the petitioner testified as follows:

> Q. What did you believe would be the risk to your immigration status, based upon the guilty plea, given you were cooperating?
>
> A. That they would not allow me to continue to stay in this country and send me back to my country.
>
> . . . .
>
> Q. When the judge addressed you during the colloquy on the guilty plea, referring to your immigration status, . . . what did you believe or understand might take place with the guilty plea and your cooperation to the government?
>
> A. What I thought at that time was that if the judge pronounces me guilty and sends me back, then I have to go back to my country.
>
> . . . .
>
> Q. Did [trial counsel] give you the choice in his representation and discussions with you that if you cooperated, you'd have an increased risk at home and a[de]creased risk of jail, and if you did not cooperate with the government, you'd have a greater likelihood of jail, but would not face threats of harm and worse when you went home?
>
> . . . .
>
> A. Yes.
>
> . . . .
>
> Q. When was it that [trial counsel] gave you this choice, speaking to you and saying this is your choice?
>
> A. Before the cooperation.

7

>     Q. And what did you tell him you'd rather do?
>     A. That I will cooperate with the government.

Id. at 22-23, 32-33. Moreover, the prosecutor testified that his general practice at the time was to warn noncitizen defendants that they should assume, despite their cooperation, that the United States Attorney's Office could not keep them in the United States. Hearing 1 Tr. at 21.

Additionally, the petitioner's plea agreement stated that it did not bind the Bureau of Immigration and Customs Enforcement, and read, "The defendant understands that he is bound by his guilty plea regardless of the immigration consequences of the plea and regardless of any advice the defendant has received from his counsel or others regarding those consequences."[2] Govt. Ex. 2 at 2, 4. Further, the following exchange took place at the petitioner's plea colloquy:

> THE COURT: Do you understand that if I accept your guilty plea and adjudge you guilty, that adjudication can be used as a basis to remove you from the United States, what used to be called deportation?

---

[2] The petitioner testified that a translator read the agreement to him at his trial counsel's office, but his trial counsel was not present for the translation. Hearing 2 Tr. at 19. The petitioner stated that the translator paraphrased the agreement and did not translate the entire document. Id. Additionally, the petitioner testified that he and trial counsel discussed the agreement "[a] little bit," and that trial counsel did not go through the agreement paragraph-by-paragraph with him. Id. at 19-20. The petitioner stated, however, that he understood that if he admitted he was guilty, "then [his] immigration case will finish, and [he would] be sent back to [his] country." Id. at 20.

Trial counsel, on the other hand, testified that it was his practice at the time to review plea agreements in their entirety with clients, with the aid of an interpreter if necessary, paragraph-by-paragraph. Hearing 1 Tr. at 72-74.

THE DEFENDANT: Yes, your Honor.

Govt. Ex. 3 at 16. And both the prosecutor's and trial counsel's sentencing submissions highlighted the fact that the petitioner would likely be removed from the United States. See Govt. Ex. 5 at 3; Govt. Ex. 6 at 4.

### C.

The Government argues that the petitioner's 28 U.S.C. § 2255 petition should be denied because he failed to prove ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668, 686 (1984), his petition is time barred, and he is not in custody for purposes of § 2255.[3] All three arguments are persuasive.

### II.

### A.

Criminal defendants have a Sixth Amendment right to the effective assistance of counsel during all critical stages of a criminal proceeding. Janvier v. United States, 793 F.2d 449, 451 (2d Cir. 1986). To establish a claim of ineffective assistance of counsel, the petitioner must show both that: (1) his

---

[3] The Government also argues that a waiver provision in the petitioner's plea agreement precludes him from bringing this ineffective assistance of counsel claim on collateral attack. However, the petitioner insists that trial counsel's allegedly ineffective assistance caused him to enter into the plea agreement. "[A] waiver of appellate or collateral attack rights does not foreclose an attack on the validity of the process by which the waiver has been procured, here, the plea agreement." Frederick v. Warden, Lewisburg Corr. Facility, 308 F.3d 192, 195 (2d Cir. 2002).

9

counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time, and (2) his counsel's deficient performance was prejudicial to his case. See Strickland, 466 U.S. at 686; Bunkley v. Meachum, 68 F.3d 1518, 1521 (2d Cir. 1995).

To meet the first prong of the Strickland test, the petitioner must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." Strickland, 466 U.S. at 687. The petitioner bears the burden of proving "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citing Strickland, 466 U.S. at 688-89). Although this case concerns representation before the Supreme Court's decision in Padilla v. Kentucky, 559 U.S. 356 (2010), the Government and petitioner agree that, before Padilla, there could be situations where an attorney's failure to advise a client about the immigration consequences of the client's case could constitute deficient performance. Hearing 2 Tr. at 62.

To meet the second prong of the Strickland test, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability

10

is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In the context of a guilty plea that a petitioner seeks to vacate, the petitioner must show that there is a reasonable probability that, but for the challenged ineffective assistance, he would not have pleaded guilty and would have insisted on going to trial. United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002), abrogated on other grounds by Padilla, 559 U.S. 356; see also Roy v. United States, No. 18cv3105, --- F. Supp. 3d ----, 2018 WL 5915335, at *3 (S.D.N.Y. Nov. 13, 2018).

In this case, the evidence establishes that trial counsel's performance was fully consistent with the requirement of effective assistance of counsel. There is no evidence supporting the petitioner's assertion that trial counsel advised the petitioner at a proffer session that the petitioner's criminal case would not affect his immigration case or his immigration status. However, there is ample evidence to the contrary, including trial counsel's knowledge of the immigration aspects of the petitioner's criminal case, trial counsel's general practice of not providing substantive legal advice in front of an adversary, and the fact that such alleged advice did not comport with the prosecutor's understanding and recollection of the case.

11

Moreover, the petitioner admitted to knowing that he could be deported following his guilty plea even though he cooperated with the Government. The petitioner also testified that trial counsel explained the potential consequences of cooperating and that he chose willingly to cooperate. Further, at his plea allocution, the petitioner told the Court he understood that his guilty plea could be a basis for his removal from the United States. Finally, trial counsel and the prosecutor both mentioned the petitioner's likely removal from the United States in their sentencing submissions, substantiating that trial counsel was well aware of – and acted in accordance with – the immigration consequences of the petitioner's criminal case. In short, no evidence supports the petitioner's claim that trial counsel performed deficiently.

The petitioner has also failed to prove Strickland's prejudice prong. The evidence shows that the petitioner was aware of the immigration consequences attached to a conviction and nonetheless rejected trial in favor of cooperating with the Government and pleading guilty pursuant to a plea agreement. Indeed, the petitioner testified that he understood that cooperating with the Government would decrease his likelihood of being incarcerated. This case is plainly distinguishable from Lee v. United States, 137 S. Ct. 1958 (2017). In that case, the evidence showed that the defendant's counsel advised the

defendant that the defendant could not be deported if deportation was not included in the plea agreement. Id. at 1963. Deportation was the determinative issue in the defendant's decision to plead guilty. Id. The defendant's counsel testified that "if he had known [the defendant] would be deported upon pleading guilty, he would have advised him to go to trial." Id.

Here, there is no "reasonable probability" that but for the alleged ineffective assistance, the petitioner would have gone to trial. See Couto, 311 F.3d at 187. Rather, the petitioner used the collateral consequences of his likely removal from the United States in pursuing a lighter sentence. Govt. Ex. 5 at 3; see Blumenberg v. United States, No. 01cr571, 2008 WL 1944012, at *3 (S.D.N.Y. Apr. 30, 2008) (holding that the petitioner's Strickland claim, regarding his entering into a plea agreement, failed in part because the petitioner pursued a downward departure at sentencing based on his possible removal).

Finally, the petitioner cannot claim to have been prejudiced by any immigration consequences of his conviction. Not only was he made aware of such consequences, but he also has had an order for his removal from the United States outstanding for over twenty years. Thus, the petitioner's Strickland claim fails under both prongs.

**B.**

Under 28 U.S.C. § 2255(f)(1), the petitioner had one year from the date on which the judgment of his conviction became final – in February 2010, after the time to appeal had run – to file this petition. The petitioner filed this petition in April 2018. To excuse the delay, the petitioner contends that he did not understand the immigration consequences of his guilty plea until recently; thus he discovered that he had a basis for the petition within a year of its filing. See 28 U.S.C. § 2255(f)(4) (stating that the one-year statute of limitations may begin on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence"). However, this argument fails in light of the voluminous evidence indicating that the petitioner understood that his guilty plea could be a basis for his removal. Because the petition was filed well after one year from the date the petitioner's judgment of conviction became final, the petition must be denied.

**C.**

Finally, "to invoke habeas corpus review by a federal court, the petitioner must satisfy the jurisdictional 'in custody' requirement of 28 U.S.C. § 2255." Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994). "[O]nce the sentence imposed for a conviction has been fully discharged, the

collateral consequences of that conviction are never sufficient, by themselves, to render an individual 'in custody' for the purposes of habeas corpus review." Abimobola v. United States, 369 F. Supp. 2d 249, 252 (E.D.N.Y. 2005) (citing Maleng v. Cook, 490 U.S. 488, 492 (1989)). Building on this proposition, a number of courts have reasoned that the collateral immigration consequences of a petitioner's conviction, including detention by immigration authorities, do not fulfill 28 U.S.C. § 2255's custody requirement. Id. (collecting cases); see Eisa v. Immigration & Customs Enf't, 08cv6204, 2008 WL 4223618, at *4 (S.D.N.Y. Sept. 11, 2008) ("[A] petitioner in immigration detention or under a final order of removal as a result of a criminal conviction is not considered 'in custody' for the purposes of Section 2255."); see also Ogunwomoju v. United States, 512 F.3d 69, 74-75 (2d Cir. 2008) (applying the same rule to 28 U.S.C. § 2254).

In this case, the petitioner has served his entire sentence of conviction. Although he is currently detained by the immigration authorities, this does not constitute custody for purposes of his § 2255 petition.

Citing United States v. Correa-De Jesus, the petitioner argues that even if he is not in custody and thus the Court cannot grant his § 2255 petition, the Court should issue a writ of coram nobis – a writ "to correct errors of the most

15

fundamental character" – to vacate his conviction. See 708 F.2d 1283, 1285 (7th Cir. 1983) (quotation marks omitted). Because the petitioner suffered no violation of his Sixth Amendment right to the effective assistance of counsel, the Court will not exercise its discretion to issue such a writ.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit. For the reasons explained above, the petitioner's 28 U.S.C. § 2255 petition is **denied.** Because the petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2). The Clerk of the Court is directed to enter judgment dismissing the petition, and to close all pending motions and to close this case.

**SO ORDERED.**

**Dated:** **New York, New York**
**February 4, 2019**

_/s/ John G. Koeltl_
John G. Koeltl
United States District Judge